# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHWESTERN DIVISION

FILED

98 SEP -1 AM 10:

U.S. DISTRICT CO
N.D. OF ALABAM

ENTERED

SEP - 1 1998

|  |  |  |
|---|---|---|
| EDGAR WALLACE HANNON, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | CASE NO. CV97-HGD-2149-NW |
| | ) | |
| REYNOLDS METALS COMPANY, | ) | |
| | ) | |
| Defendant | ) | |

### MEMORANDUM OPINION

The defendant in this matter has filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56 [Doc. #10], including a brief in support of said motion. Plaintiff has submitted a brief in opposition [Doc. #16] to which defendant has submitted a reply brief. Both plaintiff and defendant have consented to have the United States Magistrate Judge conduct any and all proceedings in the case, including the trial and entry of final judgment, in accordance with the provisions of 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 [Doc. #26].

Having reviewed the complaint, the answer, the briefs, the transcripts of depositions and all other evidentiary submissions of the parties, the court makes the following findings of fact and conclusions of law.

### PLEADINGS

Edgar Wallace Hannon, plaintiff, is pursuing remedies under the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* (ADA). It appears that plaintiff properly pursued his

27.

administrative remedies and timely filed this cause of action. Defendant has made no claim to the contrary.

According to the complaint, plaintiff was hired by Reynolds Metals Company on August 18, 1965, as an hourly worker. In December 1975, after attending and graduating from Florence State College (now the University of North Alabama) with a degree in accounting and economics, plaintiff was promoted to Reynolds' accounting department as a General Accountant. He subsequently received promotions to the position of Cost Accountant in Reynolds' Alabama Reclamation Plant (ARP).

Plaintiff states he was diagnosed in 1992 with acute depression and, in 1996, with diabetes. According to plaintiff, his supervisor, Melissa Johnson, was aware of his medical conditions. Plaintiff alleges that in June 1996 the Alloys Complex, which included the Alloys Plant (AP), Alabama Reclamation Plant (ARP), and the Southern Reclamation Center (SRC) underwent a reorganization. On June 27, 1996, plaintiff was notified that because of this reorganization he was being subjected to a reduction in force (RIF) and his job was being eliminated effective July 6, 1996. However, plaintiff asserts that his job was not eliminated but was, instead, given to Melissa Johnson, plaintiff's supervisor, whom plaintiff contends has less experience and less seniority than he. Therefore, he states he was not truly the subject of the reorganization/reduction in force, but was terminated because of his disabilities. Plaintiff alleges that his disability could have been accommodated easily by defendant but that defendant chose to fire him instead.

In its answer, defendant agrees that plaintiff was hired in August 1965 and that he was promoted to Accountant in December 1975 at the Alloys Plant. He remained there until October 1981 when he was laid off as an accountant but was transferred to the ARP as a Property and Payroll

2

Clerk. Subsequently, he was promoted to the successive jobs of Property Accountant, Cost Accountant, and General Accountant/Stores at ARP where he remained until July 1996.

The defendant asserts that it was unaware of plaintiff's diagnoses and treatment and denies that he was removed because of his alleged disabilities. Defendant agrees that the Alloys Complex was reorganized in 1996. It asserts that as a result, ARP ceased to exist as a separate "stand-alone" facility and became a part of the Alloys Plant. According to the defendant, all employees in the accounting department at ARP, except Melissa Johnson, were notified in June 1996 that they would be reduced in force on July 16, 1996. At that time, Melissa Johnson became Area Accountant at the Alloys Plant.

In addition to denying that it engaged in discriminatory behavior, defendant claims any damages, if awarded, should be offset by plaintiff's severance pay, his income from other sources and because of his failure to mitigate his damages. Defendant also asserts that any monetary award is subject the maximum monetary cap codified at 42 U.S.C. § 1981a.

## FINDINGS OF FACT

Prior to 1996, Reynolds Metals Company ran four (4) plants in Florence, Alabama: the Alloys Plant (AP), the Reduction Plant, the Alabama Reclamation Plant (ARP), and the Southern Reclamation Center (SRC). The Reduction Plant is not relevant to this case. Until 1996, AP, ARC, and SRC all had separate management and accounting departments with their own accountant-controllers. Prior to the consolidation, they were as follows: AP Controller - Sam Glasscock; ARP Controller - Melissa Johnson; SRC Controller - David Downing.

3

Plaintiff began working as an hourly employee on August 18, 1965. While employed at

Reynolds, he attended Florence State, receiving his B.S. in Accounting and Economics in 1974. On

December 16, 1975, plaintiff was hired (or promoted) into an entry level Accountant I position at

the Alloys Plant. Subsequently, he was promoted to Accountant II and later to Cost Accountant.

Plaintiff was laid off in 1981. At that time, he claimed that his layoff was unfair but claimed no

disabilities. However, he was immediately rehired by the ARP as a Property and Payroll Clerk and,

later, worked as Payroll Inventory Clerk. Plaintiff worked in clerical duties from 1981 until 1987

when Melissa Johnson, controller for ARP, promoted plaintiff to Plant Cost Accountant. In 1993,

Melissa Johnson again promoted plaintiff, this time to the position of General Accountant. He

remained in this position until his layoff in July 1996. Plaintiff was diagnosed in 1992 with acute

depression and in 1996 with diabetes. He never missed work nor told anyone at Reynolds that he

needed any accommodation for his disability.

In 1996, AP, ARP, and SRC combined and consolidated their operations into the Alloys

Plant. The decision to do this was made at the defendant's headquarters office in Richmond,

Virginia. This consolidation was part of a company-wide strategic plan to streamline business

production and, in particular, to streamline the company's aluminum can production. As a result,

ARP ceased to exist as a separate "stand-alone" facility and became a part of the Alloys Plant. All

employees in the accounting department at ARP, except Melissa Johnson, were notified in June 1996

that they would be reduced in force on July 16, 1996. At that time, Melissa Johnson became Area

Accountant at the Alloys Plant.

In connection with this consolidation, an accounting review committee was formed to review

the accounting systems at each plant. Most of the general accounting functions for the AP were

4

moved to the Richmond, Virginia, headquarters in early 1990. However, those duties were retained at ARP and SRC at that time. In 1996, it was decided that the general accounting functions for ARP and SRC also should go to Richmond. The remaining accounting work was to be done by one ARP accountant and one SRC accountant. The decision regarding who to retain for these jobs was made by Sam Glasscock. Mr. Glasscock selected the two other controllers, Melissa Johnson and David Downing.[1]

Prior to consolidation, the ARP accounting department had six employees: one (1) Controller, three (3) General Accountants, and two (2) Clerks. Plaintiff was one of the three General Accountants. Melissa Johnson, Controller, was the only one retained. Johnson's duties now include a form of cost accounting, but she uses a different system and has additional duties from those assigned plaintiff.

In June 1996, Mr. Hannon met with Sam Glasscock and Personnel Representative Sam Quillin and was advised that his job was being eliminated. Plaintiff retired with full benefits of $1,522 per month and a severance bonus of $25,000. Under defendant's "Rule of 90," employees whose age plus years of service totaled 90 or more, were qualified to receive medical benefits for life. Although Mr. Hannon did not qualify, the company waived the Rule of 90 for him and he became eligible for full lifetime medical benefits.

Reynolds has a policy against discrimination based on disabilities and a process to gain accommodation for disabilities, of which plaintiff never availed himself. Subsequent to leaving

---

[1] Although they differ with respect to the time frame in which it occurred, as well as some other details, both plaintiff and defendant agree that around the time of the consolidation, another cost accountant position either was created or became available and was filled by the former PC Systems supervisor, Ben Wilson.

5

Reynolds, plaintiff worked at Martin Industries and the Community Action Agencies, never identifying himself as disabled or in need of any accommodation. Plaintiff never told either of his subsequent employers about his depression.

## SUMMARY JUDGMENT

### Defendant's Motion

Defendant has filed a motion for summary judgment in this case, arguing that it is entitled to such as a matter of law because (1) plaintiff has failed to make out a *prima facie* case of disability discrimination because there is no proof his employer/decision-maker was aware of his disability and (2) assuming, *arguendo*, that plaintiff has made out a *prima facie* case, defendant has provided a bona fide, good faith explanation as to why it retained Ms. Johnson instead of plaintiff and he has failed to provide "significantly probative" evidence that the reason given by defendant for selecting Melissa Johnson for retention over the plaintiff was a pretext for discrimination against him.

Defendant states that though plaintiff was diagnosed with depression in 1992, for which he takes medication and sees a psychologist, and was diagnosed with diabetes in 1995 or early 1996, for which he takes medication three times a day, he never missed work nor told anyone at Reynolds that he needed any accommodation for his disability. Plaintiff states he was already being accommodated by Ms. Johnson in that he had frequent personal conversations with her which helped his depression and further that he was able to schedule his doctor's appointments around his work schedule and was allowed to take short naps at work to offset his drowsiness caused by his diabetes.

6

Defendant argues that plaintiff's only complaint or proof of discrimination is that he thinks he should be doing the cost accounting at the ARP, a job now held by Melissa Johnson.

According to defendant, plaintiff claims that the decision to choose him for the reduction in force was because of his disabilities' cost to the company and lost time. Defendant notes, however, that (1) no one ever criticized plaintiff's medical expenses; (2) despite the reduction in force, plaintiff is still eligible for full medical coverage; and (3) no one ever criticized plaintiff's time off from work to handle these problems. According to defendant, plaintiff's only proof of defendant's unwillingness to accommodate plaintiff is his stated belief that Reynolds and Mr. Sam Glasscock likely would be unwilling to accommodate him like Melissa Johnson did.

### *Prima Facie* Case

Defendant asserts that there is no direct evidence of discrimination and that, therefore, plaintiff must make out a *prima facie* case of discrimination based on circumstantial evidence as set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973), and *Willis v. Conopco, Inc.*, 108 F.3d 282, 284-85 (11th Cir. 1997). A review by the court of all the evidence in this case leads it to conclude that this is correct. Accordingly, plaintiff must first establish a *prima facie* case of discrimination by showing defendant either (1) consciously refused to consider retaining plaintiff because of his disability or (2) that the defendant regarded the disability as a negative factor in reaching that decision.

According to Reynolds, a defendant cannot be liable under ADA when it undisputedly had no knowledge of the disability since ADA covers "known disabilities." Defendant states that the decision-maker regarding the accountant layoffs at ARP, Sam Glasscock, had no knowledge of

plaintiff's disability. According to defendant, plaintiff assumes Glasscock was aware of his conditions because he believes Glasscock had access to plaintiff's personnel files and medical records. However, defendant asserts that there is no proof of such and claims that plaintiff's speculation on this point is legally insufficient. Further, it points out that plaintiff has neither alleged nor proved that there is anything in his personnel file regarding his depression or diabetes. Plaintiff also has no knowledge that Mr. Glasscock reviewed his medical records before terminating plaintiff and Mr. Glasscock himself states he never did so. [Defendant's Exhibit H, Affidavit of Sam Glasscock.]. Mr. Glasscock also stated that he has not reviewed plaintiff's personnel file since plaintiff's 1981 layoff and was unaware of his depression or his diabetes until plaintiff filed his EEOC complaint. [*Id.*]

In addition to proving that the defendant was aware of plaintiff's disability, a plaintiff must also show that the defendant was aware of the limitations caused by the disability because a "disability," as used in ADA, is an impairment which "substantially limits a major life activity." Defendant avers that it is irrelevant that Melissa Johnson may have known of plaintiff's medical conditions because she had no involvement in his termination [Defendant's Exhibit D, Deposition of M. Johnson at 71-72], and there is no evidence she ever told Sam Glasscock about plaintiff's conditions. [*See* Defendant's Exhibit H, Affidavit of Sam Glasscock]. Failing any one of the above preconditions, defendant asserts plaintiff has failed to make out the required *prima facie* case of discrimination.

8

## Defendant's Asserted Reasons for Layoff

Defendant contends that, even if a *prima facie* case of discrimination has been shown, defendant has rebutted it by articulating a legitimate, nondiscriminatory reason for the plaintiff's layoff when it demonstrated that Melissa Johnson was retained because defendant believed she was better qualified than Mr. Hannon for the position she received. Defendant also states that another accounting position that became available was filled by Ben Wilson, whom the defendant also believed was better qualified than plaintiff. According to the defendant, Wilson was, in any case, selected for his position before the plaintiff was laid off.

Having alleged a nondiscriminatory basis for the layoff, defendant further asserts that plaintiff cannot show that the reasons advanced by defendant are a pretext for discrimination. To do so, plaintiff must show "significant probative" evidence of pretext. According to defendant, plaintiff's asserted seniority is not proof of pretext, nor can he establish pretext based upon his own perception that he can do as good a job as Melissa Johnson. It is the employer's perception of plaintiff's abilities that provide a basis or lack of basis for the selection of one employee over another. *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997).

Finally, plaintiff's evidence that Reynolds Metals laid him off based on an unwillingness to accommodate his disabilities is, according to defendant, based only on plaintiff's own speculation that Sam Glasscock would not be as easily accommodating as Melissa Johnson. Defendant states that this argument lacks merit in view of the undisputed testimony that Mr. Glasscock was unaware of plaintiff's conditions at the time of his layoff and in view of the fact that plaintiff never requested any accommodation for his disability.

9

## Plaintiff's Opposition

Plaintiff, in response, alleges that he has provided evidence of intent and pretext sufficient to survive defendant's summary judgment motion. According to plaintiff, the test for claims brought following a RIF requires that a plaintiff establish a *prima facie* case by (1) proving he is a member of the protected group that was adversely affected by an employment decision; (2) proving he was qualified for his position or another position at the time of the adverse decision; and (3) providing direct or circumstantial evidence wherein a fact-finder could reasonably conclude that the employer intended to discriminate. Plaintiff states that under ADA in order to establish a *prima facie* case he need only show that (1) he has a disability; (2) he is a "qualified individual with a disability"; (3) he was subjected to discrimination as the result of the disability; and (4) the employer had actual or constructive knowledge of the disability or considered the employee to be disabled.

### *Prima Facie* Case

Plaintiff asserts that defendant has not disputed Mr. Hannon's claim that he is a qualified individual with a disability (*i.e.*, one that "limited one or more of his major life activities"). Plaintiff also asserts that he was qualified for his former position or another available position at the time of his termination. According to plaintiff, he was told he was being terminated because his job was being eliminated and because there were no other positions available for which he qualified. Plaintiff asserts that there is a question of material fact as to both these issues. He alleges his position was not eliminated; he was replaced by Melissa Johnson. He also asserts that at the time of his termination there was another position as a cost accountant available for which he was qualified which was filled by Ben Wilson.

10

To support his assertion that he was as qualified as Melissa Johnson for the cost accounting position, plaintiff makes various comparisons between the experience and qualifications of himself and Ms. Johnson. They are as follows:

| HANNON | JOHNSON |
|---|---|
| Accounting Degree | Accounting Degree |
| 30 years of experience with Reynolds Metals | 15 years experience with Reynolds Metals |
| 23 years of accounting experience at Reynolds Metals | 15 years of accounting experience at Reynolds Metals |
| Able to perform general accounting, property accounting, cost accounting, and inventory management | Able to perform general accounting, property accounting, cost accounting, and inventory management |
| Was making $42,000 a year at time of discharge | Was making $60,000 a year at time of transfer (is now making $64,000) |

He then states that the duties performed by plaintiff are still being performed by Ms. Johnson. Although she also has additional duties, Ms. Johnson herself testified that plaintiff was capable of performing her job as an accountant.


### Evidence of Pretext

Plaintiff asserts that the reasons given for his termination were pretextual. In support of this he insists evidence exists which shows Sam Glasscock had actual or constructive knowledge of plaintiff's disabilities prior to his decision to terminate plaintiff. He bases this on testimony by Ms. Johnson wherein she stated that she and Dave Downing were told to rank the accountants they supervised as to their abilities to assist defendant in deciding who to keep in the downsized accounting department. Thereafter, she stated that she met with Mr. Glasscock and had an oral

11

discussion with him regarding who should be retained. Plaintiff asserts that a reasonable jury could presume that Ms. Johnson told Mr. Glasscock about Mr. Hannon's condition. Plaintiff also states that, in any case, Ms. Johnson's knowledge of plaintiff's disability is imputed to Mr. Glasscock. He further alleges that it was unnecessary to request accommodation because Ms. Johnson already was supplying accommodation for his conditions. Since Ms. Johnson had actual knowledge of plaintiff's conditions, plaintiff asserts that case law deems Reynolds and Sam Glasscock to have constructive knowledge of Hannon's disabilities (citing *Hernandez v. Prudential Ins. Co. of America*, 977 F. Supp. 1160, 1166 (M.D. Fla. 1997), as authority for this proposition.)

Mr. Hannon also asserts that the fact that his job was not truly eliminated is further evidence that the asserted reason for his termination was pretextual. According to plaintiff, because duties which were performed by Hannon prior to his reduction in force are still being performed by others who were retained, Hannon has, under authority of *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528-29 (11th Cir. 1987), raised an issue of fact as to whether or not his job was truly eliminated. Plaintiff further asserts that the fact that Ms. Johnson is claimed to be more qualified than Mr. Hannon because the cost accounting system used since consolidation differs from the system used before then is irrelevant (1) because this system was developed by Ms. Johnson after she was selected for the job so that Mr. Glasscock could not have used this fact as a basis for his consideration when selecting Ms. Johnson and (2) because Ms. Johnson testified that plaintiff was capable of performing her job as accountant.[2] Plaintiff also asserts that his seniority is a pertinent consideration to show

---

[2] However, neither Ms. Johnson nor anyone else testified that plaintiff was capable of setting up an accounting system as did Ms. Johnson. It was only acknowledged that plaintiff could do the accounting–not set up the system of accounting.

12

that Mr. Glasscock's stated belief that Ms. Johnson and Mr. Wilson were more qualified for their positions than was plaintiff was pretextual.

Plaintiff also alleges defendant's statement that, at the time of his layoff there were no other positions available for which he was qualified, is false because a job for which he was qualified became available in June 1996 but was given to Ben Wilson. Defendant claims that Wilson was selected because he was better qualified than plaintiff and that Wilson was selected before the RIFs occurred in ARP and SRC. Plaintiff states that this is contradicted by the testimony of Larry Hester who stated that Mr. Wilson was assigned to the accounting department at precisely the same time the decision was made to terminate plaintiff. Since Mr. Wilson was transferred into the accounting department at the same time that Mr. Glasscock made the decision to terminate him, plaintiff contends the timing of his termination is indicative of the fact that defendant's stated reasons for terminating him were pretextual.

Plaintiff states that defendant has been inconsistent in its reasons for terminating plaintiff. Plaintiff asserts that defendant first claimed that plaintiff's performance was not a factor in his termination but that his position was eliminated due to a consolidation of resources and that no other position for which plaintiff qualified was available. Plaintiff contends this claim is contradicted by defendant's later assertion that plaintiff was discharged and not given the position filled by Wilson when it became available because his performance was not as good as the person chosen to fill it.

Plaintiff claims defendant first asserted that the reason for plaintiff's termination was based on economics, but never stated that performance was a motivating factor. Plaintiff states the fact that defendant subsequently has asserted plaintiff's poor performance as a justification for not putting Mr. Hannon into the position filled by Mr. Wilson, in and of itself, creates an inference of pretext.

13

Based on this, plaintiff states a reasonable jury could infer intent by Reynolds to rid itself of a disabled employee.

Plaintiff also asserts that dismissing Mr. Hannon with his $42,000 yearly salary and retaining Ms. Johnson with her $60,000 (now $64,000) salary is inconsistent with defendant's stated reason of cost saving because it would have saved more by terminating Ms. Johnson. He argues that the fact that defendant transferred a "healthy" Ben Wilson into accounting at the same time it was terminating Mr. Hannon is further evidence of pretext.

In addition, plaintiff alleges evidence of pretext is apparent due to the fact that, of the employees reduced in force by age or by alleged disability, 32 (91.5%) were in the protected categories of age and/or disability. Plaintiff also suggests this statistical evidence, when added to the purported "incoherent" explanations for plaintiff's termination, further supports his claim of pretext.

Plaintiff also claims that defendant's affirmative action policy creates a binding contract with employees which defendant breached by not taking affirmative steps to employ or advance in employment qualified disabled individuals. According to plaintiff, even if he was unaware of plaintiff's conditions, Mr. Glasscock was under a duty to find out if any disabilities existed and that Melissa Johnson, as a supervisor, should have been required to tell Mr. Glasscock of plaintiff's disabilities and limitations. Therefore, plaintiff states that there exists an issue of material fact whether defendant, having failed to do this, satisfied its "accommodation obligation" and its obligation under its affirmative action policy and federal law as a federal contractor by failing to consider plaintiff's disability as an affirmative factor concerning his retention.

14

Finally, plaintiff takes issue with defendant's assertion that plaintiff's claims regarding Ben Wilson are outside the scope of its EEOC complaint since that complaint only lists Ms. Johnson as a comparator. Plaintiff states that it is well established that an EEOC complaint is not to be strictly interpreted, citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970), and that the scope of the judicial complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.

### Defendant's Reply

Defendant objects to plaintiff's attempts to get around the "knowledge of disability" requirement, based on plaintiff's arguments that:

1)   A reasonable jury could presume Ms. Johnson told Mr. Glasscock about plaintiff's health problems; and that

2)   Ms. Johnson's knowledge is imputed to Mr. Glasscock; and that

3)   Mr. Glasscock had an affirmative duty to discovery if plaintiff was disabled; and that

4)   An ADA claim can be maintained solely upon a defendant's knowledge of the existence of a health condition without proof that the defendant was aware that the impairment was a substantially limiting impairment.

Defendant asserts that 1) and 2) above are based upon pure speculation. It further notes there is no legal authority which supports plaintiff's assertions in paragraphs 2) and 3) above. Finally, according to defendant, plaintiff's argument 4) above is based on an incomplete statement of the extent of knowledge required before a defendant can be said to be on notice of a disability sufficient to involve the ADA. The defendant also disagrees with plaintiff's contention that plaintiff's job was not eliminated.

15

Defendant also asserts that whether the defendant's statement, that there was no other job available for which plaintiff was qualified, is accurate or mistaken depends on the time frame. At the time plaintiff was notified of the reduction in force, defendant asserts that Ben Wilson had already been selected for the one other accounting position that had become available within the company. Reynolds states that, in view of plaintiff's failure to assert in his EEOC complaint that the hiring of Ben Wilson was based upon an ADA violation, asserting only that he should have been retained for Ms. Johnson's job, bars admission of evidence concerning his failure to be selected for this accounting position as evidence of pretext. Defendant avers that, even assuming this issue was fairly raised by plaintiff's EEOC complaint, it does not constitute evidence of intent to discriminate. Defendant states that despite plaintiff's conclusory statement, there is no evidence Mr. Wilson was "a non-disabled, healthy Ben Wilson," nor, more significantly, is there any evidence that Mr. Glasscock had any knowledge of plaintiff's disabilities or any proof to contradict Mr. Glasscock's assertion that plaintiff was not the most qualified accountant when compared to Ben Wilson.

Defendant also asserts that its reasons for not retaining plaintiff instead of Ms. Johnson and for not giving plaintiff the position awarded to Mr. Wilson are not inconsistent. According to defendant, plaintiff was never terminated because of his performance, but was not retained because he was not the most qualified for retention during an economically necessary reorganization. Defendant also asserts plaintiff has provided no evidence to support his allegation that plaintiff was dismissed because he was a drain on the company. In addition, defendant asserts that plaintiff's argument that he had more seniority than Ms. Johnson and that the company should have retained him at his lower salary if they wished to save money is meritless. According to defendant, plaintiff's statistical data is meaningless because it used too broad a definition of "disabled persons,"

16

included alleged age discrimination victims in his pool and, further, that he failed to set out the statistics concerning the total population from which the former employees were drawn.

Defendant also attacks plaintiff's "affirmative action" contentions as inconsistent with prevailing case law rejecting affirmative action in ADA cases. It also points out that plaintiff pled no breach of contract claim in his complaint and that there is no legitimate basis for such a claim. Finally, defendant argues that plaintiff's alleged evidence of pretext merely consists of speculation without foundation. It argues that there is no evidence from which a fact-finder could reasonably conclude that there was an intent to discriminate by Reynolds Metals.

## ANALYSIS

In all motions for summary judgment, all evidence and factual inferences reasonably drawn therefrom must be viewed in the light most favorable to the non-moving party. *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997). Summary judgment is proper if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). To defeat a motion for summary judgment, the non-moving party may not rely on mere allegations, but must raise significant probative evidence that would be sufficient for a jury to find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment may be granted if the evidence is "merely colorable." *Id.* To establish a *prima facie* case under ADA, a plaintiff must show: (1) he has a disability; (2) he is a qualified

17

individual; and (3) he was discriminated against because of the disability. 42 U.S.C. § 12132; *see also, e.g., Harris v. H & W Contracting Co.*, 102 F.3d 516, 519 (11th Cir. 1996).

The ADA defines "disability" as (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2). A "qualified individual with a disability" is an individual with a disability "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

Depression has been held to constitute a mental impairment. *See, e.g.,. Doe v. Region 13 Mental Health-Mental Retardation Commission*, 704 F.2d 1402, 1408 (5th Cir. 1983).[3] However, in order to constitute a disability under the ADA, the impairment must substantially limit a major life activity.[4] *Pritchard v Southern Company Services*, 92 F.3d 1130, 1132 (11th Cir.), *amended on reh'g in part by* 102 F.3d 1118 (11th Cir. 1996), *cert. denied*, _____ U.S. _____, 117 S. Ct. 2453, 138 L.Ed.2d 211 (1997). Likewise, diabetes can sufficiently impair an individual to constitute a disability. *See Holbrook v. City of Alpharetta*, 112 F.3d 1522 (11th Cir. 1997). Defendant's motion is initially grounded in the claim that the plaintiff has failed to meet the third requirement for establishing a *prima facie* case, that is, that he was discriminated against because of his disability. *Harris, supra*. In order to establish this prong, when it is claimed that a plaintiff was terminated in

---

[3] *Doe* involved the Rehabilitation Act of 1973, 29 U.S.C. § 2701, *et seq.*, but Congress intended for courts to rely on Rehabilitation Act cases when interpreting similar language in the ADA. 29 C.F.R. Part 1630, App. §§ 1630.2(g) and 1630.2(m).

[4] "The determination of whether an individual has a disability is not necessarily based on the name or the diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual." 29 C.F.R. Part 1630, App. § 16130(2)(j).

18

an across-the-board RIF, the plaintiff must produce circumstantial or direct evidence by which a fact-finder might reasonably conclude that the employer intended to discriminate against the plaintiff based upon his disability in reaching its decision to terminate him. *See Earley v. Champion International Corp.*, 907 F.2d 1077, 1082-83 (11th Cir. 1990), *Verbraeken v. Westinghouse Electric Corp.*, 881 F.2d 1041 (11th Cir. 1989). In support of its motion for summary judgment, Reynolds Metals contends that plaintiff has failed to show that he was discriminated against "because of" his disability. Reynolds claims that Mr. Hannon has not demonstrated that Reynolds' decision-maker had any knowledge of plaintiff's disability. This is an essential element of plaintiff's *prima facie* case, *Morisky v. Broward County*, 80 F.3d 445, 447 (11th Cir. 1996), the absence of which constitutes the defendant's primary defense.

### Knowledge of Defendant of Plaintiff's Disability

The evidence reflects that final decision-making authority concerning who was to be retained and who was to be RIF'd from the ARP Accounting Department was vested in Sam Glasscock, controller of the AP. [Glasscock deposition at 31; plaintiff's deposition 2 at 48; Johnson deposition at 76]. There is no evidence of substance produced by plaintiff that reflects direct knowledge of plaintiff's disabilities by Sam Glasscock, and Mr. Glasscock denies having had any such knowledge at the time he made the decision to terminate Mr. Hannon. [Glasscock affidavit, ¶ 6; Hester deposition at plaintiff's Exhibit 2.] Furthermore, there is no evidence to contradict defendant's contention that plaintiff had no contact with Mr. Glasscock until the day he learned of his termination [plaintiff's deposition at 185] and that he neither informed Glasscock or had any knowledge that anyone else had informed him of his depression and diabetes. [*Id.*] This failure to

19

report his own disabilities supports Reynolds' contention that it had no knowledge of plaintiff's medical conditions.

Plaintiff attempts to justify his failure to request accommodation for his conditions by claiming that Melissa Johnson was already providing all the accommodation he needed, making contact with upper management unnecessary. However, this misses the point that his failure to tell anyone at Reynolds that he needed any consideration for his disabilities is corroborative of Mr. Glasscock's testimony that he was unaware of plaintiff's health problems at the time he made the decision to terminate him.

Plaintiff counters that Melissa Johnson, who was plaintiff's supervisor, had knowledge of both of plaintiff's medical conditions and that she has admitted that she ranked the accountants in her department as to the abilities of each to be used by the company to determine whom to keep and whom to discharge. [Johnson deposition at 74-75]. According to her own testimony, she made recommendations concerning who should be retained to Sam Glasscock. [*Id.*] Based on this, plaintiff argues that it could be presumed by a reasonable jury that Ms. Johnson told Mr. Glasscock about Mr. Hannon's disabilities.

This is, at best, a very weak argument. For one, Ms. Johnson testified that she put plaintiff at the top of her list of people to be retained. [*Id.* at 75.] This tends to discount plaintiff's argument. Given Mr. Hannon's high ranking by Ms. Johnson, it is unlikely that she considered his health problems as impacting his job performance and, thus, it is unlikely that she felt, much less expressed, any serious reservations that plaintiff's problems were an impediment to his job performance. Despite having taken the opportunity to depose both Ms. Johnson and Mr. Glasscock, the plaintiff has obtained no testimony to reflect even indirectly that Ms. Johnson passed on or discussed with

20

Mr. Glasscock any information concerning plaintiff's health problems. Plaintiff's suggestion that she might have done so would require the jury to infer such with no evidence to support the inference other than the fact that Ms. Johnson talked to Mr. Glasscock about her rankings of the ARP accountants' abilities, that Ms. Johnson thereafter provided a list of these rankings to Mr. Glasscock, and that plaintiff was subsequently RIF'd. To infer that, *ergo*, Ms. Johnson must have told Mr. Glasscock about Mr. Hannon's health problems does not reasonably follow from these facts. An inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence but is pure conjecture and speculation. *Blackston v. Shook and Fletcher Insulation Co.*, 764 F.2d 1480, 1482 (11th Cir. 1985); *Lee v. Celotex Corp.*, 764 F.2d 1489, 1490 (11th Cir. 1985); *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1326 (11th Cir. 1982). Evidence which does nothing more than show that an incident possibly could have occurred through a certain way or means, cannot justify the conclusion that it occurred that way or by that means. *Green v. Reynolds Metals Co.*, 328 F.2d 372, 375 (5th Cir. 1964)[5]; *see also Hedberg v. Indiana Bell Telephone Co. Inc.*, 47 F.3d 928, 931-932 (7th Cir. 1995).

Plaintiff contends that, even if Ms. Johnson did not tell Mr. Glasscock of plaintiff's disabilities, Ms. Johnson's knowledge of this is imputed to Mr. Glasscock. However, the authority cited by plaintiff, *Hernandez v. Prudential Insurance Company of America, supra*, is inapposite to this case. *Hernandez* concerned whether actual knowledge of plaintiff's HIV-positive status had been relayed to the employer by another employee at plaintiff's request. It did not involve imputed knowledge of any sort. Indeed, it is illogical to assume that a person who has "imputed" knowledge

---

[5] *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

21

with no actual knowledge of an event or a condition, could form the requisite intent to discriminate on that basis.  To intend to discriminate on the basis of a disability of necessity requires actual knowledge of the existence of the disability.

Furthermore, knowledge that an employee has health problems does not automatically translate into knowledge that that employee has a "disability" as that term is defined by the ADA. Even assuming that Mr. Glasscock had knowledge of Mr. Hannon's health problems, there is no evidence to suggest that these impairments substantially limited a major life activity of plaintiff's. In fact, the testimony of Ms. Johnson was that plaintiff was a very hard worker who, even when he took off work for a doctor's appointment, would return to the office and stay until the work was done. [Johnson deposition at 65-66].  Plaintiff's own testimony was that he performed all the functions of his job "very well." [Plaintiff's deposition 1-139]. He consistently received above average performance evaluations from Ms. Johnson. [*Id.* at 1-140, 207]. There is no evidence that Mr. Glasscock was aware that plaintiff's health problems substantially limited him in any way, much less in the performance of a major life activity. "At the most basic level, it is intuitively clear when viewing the ADA's language in a straightforward manner that an employer cannot fire an employee 'because of' a disability unless it knows of the disability." *Morisky v. Broward County,* 80 F.3d at 448 (*citing Hedberg v. Indiana Bell Telephone Co. supra*).

As a result of the failure of plaintiff to provide "significant probative evidence" of defendant's knowledge of his disability, he has failed to establish a *prima facie* case under ADA and the moving party is entitled to a judgment as a matter of law. *Celotex v. Catrett, supra*; *Harris v. H & W Contracting, supra*.

22

## Reasons of Defendant

Alternatively, if plaintiff had established a *prima facie* case of discrimination, the defendant would then be called upon to rebut this by articulating legitimate non-discriminatory reasons for his action. *See, e.g., Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d at 1287; *Willis v. Conopco, Inc.*, 108 F.3d at 287. If the defendant does so, the plaintiff then would be required to demonstrate that he will be able to establish at trial that the employer's proffered nondiscriminatory reasons are a pretextual ruse designed to mask the proscribed discrimination. *Stewart, supra.*

Testimony reflects that the prime moving factor for the consolidation of AP, ARP, and SRC was economics, *i.e.*, an attempt to cut costs and improve profits. [Johnson deposition at 75-76; Glasscock deposition at 21-24; Plaintiff's Exhibit B, Memo of H. W. Moore]. During the consolidation, general accounting functions for ARP and SRC were transferred to the headquarters office in Richmond, Virginia. [Glasscock deposition at 26]. The remaining accounting work was done by a significantly reduced staff selected by Mr. Glasscock. [*Id.* at 31]. The only accounting personnel from the ARP and SRC retained by Glasscock were the two controllers of each respective plant,[6] Melissa Johnson and Dave Downing. [Glasscock Affidavit at ¶ 3]. Mr. Glasscock stated he retained Ms. Johnson because he believed she was "much better qualified to set up the system that we ended up using on that job." [Glasscock deposition at 32]. Testimony also established that Ms. Johnson graduated *summa cum laude* from the University of Alabama with a degree in Business Administration with a concentration in accounting. [Johnson deposition at 14-15]. Ms. Johnson

---

[6] Ben Wilson filled one remaining accounting job but, though he had worked in accounting for 14 to 15 years, he had been promoted to a supervisory position in PC Support in 1991. He was reassigned to the accounting slot at the time of the reorganization. Though the exact time this occurred is in dispute, Mr. Glasscock chose Mr. Wilson as better qualified than Mr. Hannon.

23

testified to considerable continuing education, including various computer training courses, several leadership seminars, and leadership effectiveness training. [*Id.* at 16]. Furthermore, she had worked at ARP as plaintiff's supervisor and plant controller for several years. Based on these facts, it appears that the defendant has established legitimate non-discriminatory reasons for choosing Ms. Johnson over Mr. Hannon.[7]

There is no dispute that Reynolds Metals reorganized its accounting department and that numerous jobs were eliminated. The fact that Ms. Johnson took on many of Mr. Hannon's accounting duties is irrelevant in a reduction-in-force situation. Even if Mr. Hannon's position was not completely eliminated, since other positions were wiped out in the RIF, there was a need for the company to decide who should fill the remaining revised positions. In doing so, the company is entitled to choose the person the company believes is the most qualified. It is clear that several accounting jobs that were carried on at the ARP now no longer exist. In such a situation, Reynolds may take someone who held one of the eliminated jobs and put that person in plaintiff's job as long as it does not do so with the intent to unlawfully discriminate against the plaintiff.[8] *See Gray v. University of Arkansas at Fayetteville*, 883 F.2d 1394, 1401 (8th Cir. 1989) (an employer's articulated reason for terminating a member of a protected class need not be a sound business reason or even a fair one; the only relevant inquiry is whether the decision is based on an unlawful discriminatory basis). Furthermore, the inquiry into pretext centers on the employer's beliefs, and

---

[7] The same is true regarding Ben Wilson. He had 14 to 15 years' accounting experience with Reynolds and another 5 years' supervisory experience. Mr. Glasscock's assertion that he chose Mr. Wilson as better qualified also establishes a legitimate, non-discriminatory reason.

[8] Plaintiff's seniority does not necessarily make him more qualified for a position. Considering the fact that both Ms. Johnson and Mr. Wilson had considerable experience and seniority themselves, the fact that Mr. Hannon may have had more is an insignificant factor.

24

not the employee's own perceptions of his performance. *Holifield v. Reno, supra.* The decision to retain Johnson was not illogical, regardless of whether she moved into a newly-created position or simply took over plaintiff's old job, with a few new bells and whistles added to his old assigned duties.

### Evidence of Pretext

Plaintiff claims that Reynolds has given conflicting reasons for Hannon's discharge stating defendant first justified its termination of plaintiff based on economic reasons and, later, based on his performance. However, a plain reading of the defendant's response shows that this simply is not the case. The defendant has consistently argued that the consolidation and resulting terminations were carried out for economic reasons. Reynolds then decided whom to keep for the remaining jobs based upon who was best qualified. There is no inconsistency here.

Plaintiff further alleges that a reasonable jury could conclude that Reynolds perceived Mr. Hannon as a "drain on the company" because of time spent counseling plaintiff or allowing him to take naps. However, as noted elsewhere, there is no evidence that the decision-maker, Mr. Glasscock, had this information when he decided to terminate plaintiff, except that which can be obtained by guess and surmise. This claim is further contradicted by the fact that Mr. Hannon was given access to full medical insurance coverage by Reynolds for life. It provided the coverage to him even though plaintiff did not qualify under the company "Rule of 90." If Reynolds felt that Mr. Hannon was a drain on the business because of his health problems, it seems unlikely it would then turn around and give him medical coverage for life.

25

Plaintiff contends also that retaining Ms. Johnson at her $64,000 salary rather than retaining Mr. Hannon at his $42,000 salary contradicts defendant's cost-saving rationale used to justify the consolidation effort at Reynolds. This argument lacks merit. Reynolds cut at least four of six accounting jobs at the ARP and revised and restaffed the remaining one. The fact that Ms. Johnson's salary is higher than plaintiff's salary is irrelevant. The fact is that eliminating four or five other positions in the ARP accounting section was an effective cost saving measure.

The "statistical evidence" proffered by plaintiff is presented with no framework for comparison. Statistics without an analytical foundation are "virtually meaningless." *Brown v. American Honda Motor Co.*, 939 F.2d 946, 952-53 (11th Cir. 1991), *cert. denied*, 502 U.S. 1058, 112 S. Ct. 935, 117 L.Ed.2d 106 (1992); *Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 962 (11th Cir. 1997). *See also, Bibby v. Drummond Co.*, 818 F. Supp. 325, 329-30 (N.D. Ala. 1993), *aff'd*, 20 F.3d 1174 (11th Cir. 1994). Therefore, this evidence is not substantial proof of pretext.

Likewise, defendant's affirmative action policy does not create any rights accruing to plaintiff or obligations owed by the defendant under the Americans With Disabilities Act. *Terrell v. USAir, Inc.*, 132 F.3d 621, 627 (11th Cir. 1998) (ADA does not require affirmative action in favor of individuals with disabilities). Additionally, there is no basis for arguing breach of contract as such a claim was never pled by plaintiff nor viable under Alabama laws regarding employment contracts. *Hoffman La-Roche, Inc. v. Campbell*, 512 So. 2d 725 (Ala. 1987).

### Ben Wilson

Plaintiff also argues that he should have been given the position given to Ben Wilson. This argument appears for the first time in plaintiff's brief in opposition to summary judgment. It was

26

not raised in his EEOC complaint. Plaintiff, nevertheless, argues that this fact is relevant evidence that Mr. Glasscock's stated reasons for his failure to retain him are pretextual. However, plaintiff's initial complaint was that Ms. Johnson was given his job. He did not allege that he should also have received Ben Wilson's job. The defendant tailored its response to the plaintiff's allegations. Since the only job to which he alleged himself to be entitled was Ms. Johnson's, it is not surprising that the defendant did not respond concerning why Ben Wilson's position was not filled by plaintiff. Once plaintiff raised the issue, the defendant responded that Wilson was more qualified than plaintiff for that position also. As noted above, a review of the qualifications of Ms. Johnson, Mr. Wilson, and Mr. Hannon show that all have extensive work experience in the accounting profession. Ms. Johnson has more academic credentials (*summa cum laude*) and management training than plaintiff. · Both Ms. Johnson and Mr. Wilson have extensive supervisory experience that Mr. Hannon does not have. Considering all these factors, plaintiff has failed to show by any substantial evidence that the reasons given for retaining Ms. Johnson and Mr. Wilson are pretextual.

Having reviewed all of plaintiff's claims of pretext, it does not appear that he has presented "significant probative" evidence sufficient to overcome defendant's stated legitimate non-discriminatory reasons proffered to justify termination of the plaintiff. This being so, summary judgment is mandated for this reason also.

### CONCLUSION

Upon review of all briefs, exhibits, and applicable law, and viewing all facts in a light most favorable to the defendant, the court finds that plaintiff has failed to prove that there is any significant probative evidence that the decision-maker for the defendant who terminated plaintiff had

27

knowledge of plaintiff's health conditions or that any such condition affected a major life function sufficient for him to have reason to believe that plaintiff was a "qualified individual with a disability" under the ADA. As a result, plaintiff has failed to make out a *prima facie* case of discrimination under ADA. In addition, even assuming plaintiff has made out a *prima facie* case, defendant has established a legitimate, non-discriminatory reason for plaintiff's termination which plaintiff has failed to rebut. Therefore, summary judgment in favor of defendant with regard to all claims of plaintiff is appropriate.

A separate order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

The Clerk is **DIRECTED** to serve a copy of this Memorandum Opinion on all counsel of record for plaintiff and defendant.

DONE this $\underline{31^{st}}$ day of August, 1998.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE

28